384 So.2d 428 (1980)
STATE of Louisiana
v.
Karl CUSTARD.
No. 66295.
Supreme Court of Louisiana.
May 19, 1980.
Michael S. Gallagher, Supervising Atty., James E. Stewart, Student Practitioner, Loyola Law School Clinic, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.[*]
Defendant Karl Custard was charged by bill of information with attempting to obtain a controlled dangerous substance, phenmetrazine, by fraud, deceit, misrepresentation, or subterfuge in violation of R.S. 40:971 and 979. After trial defendant was *429 found guilty as charged. Thereafter he was found to be a multiple offender and was sentenced to two and one-half years in Orleans Parish Prison. The only issue raised on this appeal is whether the trial court erred in denying defendant's motion for a new trial in which he contended that the state failed to prove that defendant possessed the requisite knowledge or intent to commit the crime charged.
At trial the state adduced the following evidence. Defendant presented a prescription in the name of Mary Sherman to the pharmacist at a New Orleans drugstore. Suspecting that the signature of the physician on the prescription might be a forgery, the pharmacist telephoned the physician to verify the signature. The pharmacist learned that the physician had not issued the prescription, whereupon he notified the New Orleans Police Department. Two plainclothes narcotics officers were sent to the drugstore to investigate.
The pharmacist was instructed to return the prescription unfilled, and through a prearranged signal to identify defendant to the officers. After defendant returned to pick up the prescription and it was returned to him unfilled, he walked to the front of the store and entered a check-out line. Through the windows of the store front, defendant saw the two narcotics officers talking with a uniformed policeman regularly stationed at the drugstore. Defendant then left the check-out line, walked to the back of the store and handed the unfilled prescription to a friend employed at the store, asking him to keep the prescription until later that evening. Defendant was then arrested by the officers and searched. When the search failed to produce the prescription, the uniformed officer obtained the prescription from the employee to whom defendant had earlier passed it. Expert testimony indicated that the forged signature on the prescription was not in the defendant's handwriting.
Defendant contends that the state failed to prove an essential element of the crime that defendant intentionally and knowingly attempted to obtain the drugs with a forged prescription.[1] Defendant argues that under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence presented by the state was insufficient for a rational trier of fact to find beyond a reasonable doubt every essential element of the crime. Alternatively, defendant contends that even under this Court's "some evidence" standard, there was no evidence that defendant knew the prescription was forged or that he intentionally attempted to obtain the drugs through a forged prescription. The state contends that under any standard, it presented sufficient circumstantial evidence that defendant possessed the requisite knowledge or intent.
The Louisiana Constitution of 1974 limits this Court's appellate review of criminal convictions to questions of law. La. Const. art. 5, § 5(C). Consequently, this Court has long held that it is only when there is a total lack of evidence of an essential element of a crime that a question of law is presented (State v. Main Motors, 383 So.2d 327 (La.1979) and that sufficiency of the evidence is a matter to be decided by the trier of fact (State v. Marcal, (La. 1979) No. 64,318). However, when the state relies upon circumstantial evidence to prove an essential element of a crime, the standard of review is whether there is some evidence from which the trier of fact could reasonably conclude that beyond a reasonable doubt the accused had committed every essential element of the crime with which charged.[2]State v. Matthews, 375 So.2d 1165 (La.1979).
*430 The standard of review for a conviction based on circumstantial evidence is closely similar to, but perhaps slightly narrower than the Jackson v. Virginia standard. See State v. Matthews, supra. In Jackson the Supreme Court held, at least for federal habeas corpus relief under the due process clause, that on review of the sufficiency of the evidence the "relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in the original.) This Court has yet to fully embrace Jackson v. Virginia.[3]
We need not determine whether the standard announced in Jackson is applicable in the instant case for under either the "no evidence" or the Jackson standard, the state presented sufficient evidence that defendant knowingly and intentionally attempted to obtain the drugs with a forged prescription. Although intent is a question of fact, it need not be proven as a fact and may be inferred from the circumstances of a transaction. R.S. 15:445; State v. Procell, 365 So.2d 484 (La.1978); State v. Carter, 363 So.2d 893 (La.1978). Consequently, the state may rely on circumstantial evidence to prove this element of a crime. At trial the state introduced evidence that defendant presented a forged prescription to the pharmacist to be filled. After it was returned to him and he observed two narcotics officers talking with a uniformed policeman outside the drugstore, defendant attempted to rid himself of the forged prescription by handing it to an acquaintance who worked at the store.
State v. Brown, 352 So.2d 690 (La.1977), upon which defendant relies to contend that the state produced no evidence, is distinguishable from the instant case. In Brown this Court reversed a conviction for possession of phenmetrazine and forgery of a prescription for phenmetrazine on the basis that there was no evidence that defendant knew that the prescription was forged. The only evidence presented in that case was that the prescription given the pharmacist was forged, that defendant appeared at the pharmacy to pick up the prescription, and that upon defendant's arrest, the pills were scattered on the seat of her car. In the instant case in which defendant is charged with attempting to obtain drugs by fraud, misrepresentation, deceit or subterfuge, the state presented evidence of defendant's evasive acts after the prescription was returned to him unfilled.
Under this Court's traditional "no evidence" standard, there is clearly some evidence that defendant knew that the prescription was forged and that he intentionally attempted to obtain the drugs illegally. And even under the standard in Jackson, the evidence of defendant's evasive acts upon seeing the officers after the prescription was returned was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant knew the prescription was forged.

Decree
For the foregoing reasons, the conviction and sentence of defendant are affirmed.
AFFIRMED.
MARCUS, J., concurs.
NOTES
[*] Honorable FREDERICK STEPHEN ELLIS participated in this decision as an Associate Justice Pro Tempore.
[1] Defendant was charged under R.S. 40:971 which provides in pertinent part:

"B. (1) It shall be unlawful for any person knowingly or intentionally:
* * * * * *
(b) To acquire or obtain possession of a controlled dangerous substance by misrepresentation, fraud, forgery, deception or subterfuge...."
[2] R.S. 15:438 provides as follows:

"The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
[3] Although this Court in State v. Matthews, supra, and State v. Abercrombie, 375 So.2d 1170 (La.1979) suggested in dicta that it would follow Jackson, following those cases the Court has been less than explicit about which standard applies to this Court's review on direct appeal. It remains for future cases for this Court squarely to confront the question of whether it will follow Jackson or persist in the "no evidence" standard of review.